**PELTON GRAHAM LLC**
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

*Attorneys for Plaintiff and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUAN CARLOS NARANJO, Individually and on Behalf of All Others Similarly Situated,<br><br>                        Plaintiff,<br><br>-against-<br><br>DREX CORPORATION, MARCUS HANNICK and MICHAEL DURCAN, Jointly and Severally,<br><br>                        Defendants. | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Juan Carlos Naranjo (the "Plaintiff"), individually and on behalf of all others similarly situated, as class and collective representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff is a former laborer at Defendants' construction company based in Maspeth, Queens, NY. For his work, at all times relevant, Plaintiff was paid a straight-time hourly wage for

all hours worked such that he did not receive overtime premiums for hours worked over forty (40) each week.

2.      Additionally, Defendants failed to provide Plaintiff with a wage notice annually or when his wage rate(s) changed, or wage statements along with his weekly wage payments.

3.      Plaintiff brings this action to recover unpaid overtime premiums owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiff also brings claims for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

4.      Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendants and his NYLL claims on behalf of himself and a Federal Rules of Civil Procedure 23 class of all laborers, and other construction employees who worked for Defendants during the six (6)-years preceding the filing of this complaint.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district and Defendants' business is located in this district.

7.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§

2

2201 and 2202.

## THE PARTIES

**Plaintiff:**

8.      Plaintiff Juan Carlos Naranjo ("Naranjo") was, at all relevant times, an adult individual residing in, Queens County, New York.

9.      Throughout the relevant time period, Plaintiff performed work for Defendants at several of Defendants' residential, commercial, and mixed-use construction projects throughout the New York City area, including in Queens and Kings Counties.

10.      Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**Defendants:**

11.      Defendant Drex Corporation ("Drex Corp" or the "Corporate Defendant") is an active New York corporation with its principal place of business at 46-11 54th Avenue, 2nd Floor, Maspeth, NY 10018 and a New York State Department of State Process Address of C/O United States Corporation Agents, Inc., 70-14 13TH Avenue, Suite 202, Brooklyn, NY 11228.

12.      Defendants Marcus Hannick ("Hannick") and Michael Durcan ("Durcan" and, together with Hannick, the "Individual Defendants" and, collectively with the Corporate Defendant, the "Defendants") are co-founders, owners, and operators of the Corporate Defendant.

13.      Upon information and belief, the Individual Defendants maintain operational control over and manage the Corporate Defendant by supervising and determining the wages and compensation of employees, determining the company's policies with respect to payroll, establishing employees' work schedules and project assignments, maintaining employee records,

and through possessing the authority to hire and fire employees, including Plaintiff.

14.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendant and acted intentionally in their direction and control of Plaintiff and the Defendants' other similarly situated employees, and are each an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendant.

15.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

16.     At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

17.     At all relevant times, Plaintiff was employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

18.     Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.     Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiff brings his First Cause of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since September 22, 2017 and through the entry of judgment in this case (the "Collective Action Period") who worked as laborers, foreman and/or other construction employees (the "Collective Action Members").

20.     A collective action is appropriate in this circumstance because Plaintiff and the

Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay overtime premiums for work performed in excess of forty (40) hours each week. As a result of this policy, Plaintiff and the Collective Action Members did not receive overtime premium payments for all hours worked in excess of forty (40) hours per week.

21.     Plaintiff and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

22.     Pursuant to the NYLL, Plaintiff brings his Second through Fourth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants in New York at any time since September 22, 2014 and through the entry of judgment in this case (the "Class Period") who worked as laborers, foreman and/or other construction employees (the "Class Members").

23.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

24.     The Class Members are so numerous that joinder of all members is impracticable. Although the precise number of Class Members is unknown to Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

25.     Upon information and belief, there are well in excess of forty (40) Class Members.

26.     Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting the individual members of the Class. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions

5

include, but are not limited to:

    a. whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

    b. whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

    c. whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

    d. whether Defendants failed to provide Plaintiff and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

    e. whether Defendants failed to provide proper wage notice to Plaintiff and the Class Members at the beginning of their employment and/or on February 1 of each year and/or when their wage rate changed, as required by the NYLL;

    f. whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

    h. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

27. <u>Plaintiff's claims are typical of the Class Members' claims.</u>  Plaintiff, like all Class Members, was an hourly construction employee of Defendants who worked for Defendants pursuant to their corporate policies.  Plaintiff, like all Class Members, was, *inter alia*, not paid overtime premium pay for hours worked over forty (40) hours in a given workweek and did not receive proper wage statements or wage notices. If Defendants are liable to Plaintiff for the claims

enumerated in this Complaint, they are also liable to all Class Members.

28.    <u>Plaintiff and his Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover his own damages.

29.    Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

30.    <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

31.    Defendants are sophisticated parties with substantial resources. The individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.  The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Business**

32.     Drex Corp, which initially started in 2005 as Nua LLC and has since expanded, provides specialized construction services, including but not limited to support of excavation, pile drilling, dewatering and foundation work, throughout the New York City area. (https://www.drexnyc.com/about/).

33.    Drex Corp was co-founded in or around 2015 by the Individual Defendants, who directly handle the day-to-day operations of the company, including its business development, project management, staff supervision, and site safety.

34.     Drex Corp is an active corporation registered with the New York State Department of State, Division of Corporations on September 9, 2015.

35.     Upon information and belief, the Individual Defendants are the owners and operators of Drex Corp.

36.     Upon information and belief, the Individual Defendants take an active role in the management, operation, and supervision of the Corporate Defendant's course of business, including the upkeep and maintenance of the properties serviced by the Corporate Defendant, and by hiring and firing employees for their excavation and construction projects.

37.     Upon information and belief, at all times relevant, the Individual Defendants have held the power and authority to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

**Plaintiff's Work for Defendants**

38.     Plaintiff Naranjo was employed by Defendants from in or around January 1, 2017 through approximately August 27, 2020 (the "Naranjo Employment Period"), when he was terminated by Defendant Hannick.

39.     Plaintiff Naranjo was hired as a laborer. Throughout his employment, Plaintiff performed deep excavation work, which required setting up and arranging form boards for framing structures, removal of debris and soil, drilling and monitoring hose connectors for dewatering, and concrete work for Defendants.

40.     Plaintiff Naranjo worked at several of Defendants' project sites in Brooklyn, Manhattan and Queens. Although Plaintiff does not recall all of the projects where he worked, he remembers having worked for about two (2) or three (3) weeks on an extension and renovation at

Defendant Durcan's residence, and at the following projects:

- Manhattan Projects

  o The Aloft Hotel located at 132 W 28th Street, New York, NY 10001,

    (https://www.drexnyc.com/portfolio-items/aloft-hotel-foundation/);

  o A mixed-use residential project located at 59 Henry Street, New York, NY

    10002, (https://www.drexnyc.com/portfolio-items/manhattan-

    superstructure-excavation/).

- Queens Projects

  o 22-34 Jackson Avenue, Queens, NY 11101;

  o A Brownsfield Cleanup and Renovation Project at 131-10-22 Avery Street,

    Flushing, NY 11355;

  o  42-80 Main Street, Flushing, NY 11355;

  o 47-01 Vernon Boulevard, Long Island City, NY 11101;

  o 41-26 44th Street, Sunnyside, NY 11104.

- Brooklyn Projects

  o 825 39th Street, Brooklyn, NY 11232;

  o 43-08 52nd Street, Brooklyn, NY 11232;

  o 2286 Cropsey Avenue, Brooklyn, NY 11214;

  o An Affordable Housing Project at 50 Pennsylvania Avenue, Brooklyn, NY
    11207.

41.    Although his schedule varied depending on which project he was assigned to, from

the start of the Naranjo Employment Period in or around January 1, 2017 until approximately June

2018, Plaintiff Naranjo typically worked Monday through Friday from approximately 7:00 a.m. to

4:00 p.m., for a total of approximately forty-five (45) hours per week. At least once a month, Plaintiff was required to perform concrete work, on which days Plaintiff would work until approximately 6:00 p.m., for an eleven (11) hour shift, such that during those weeks he worked a total of approximately forty-seven (47) hours per week.

42.     From approximately June 2018 until the end of the Naranjo Employment Period on or about August 27, 2020, Plaintiff worked Monday through Friday from approximately 7:00 a.m. to 4:00 p.m., and at least twice a month worked on Saturday from approximately 9:00 a.m. to 4:00 p.m., for a total of between forty-five (45) and fifty-four (54) hours per week. From approximately February 2019 until about May 2019, Plaintiff was assigned to work at the 28th Street project performing concrete and framing work. Plaintiff's schedule at this project was Monday through Friday from approximately 7:00 a.m. to about 5:00 p.m., for a total of approximately fifty (50) hours per week. On one occasion at the 28th Street project, Plaintiff worked from approximately 5:00 a.m. to midnight, and on another occasion from 5:00 a.m. to 11:00 p.m., for a total of between eighteen (18) and nineteen (19) hours in a single day.

43.     Throughout the Naranjo Employment Period, on certain days when Plaintiff Naranjo was required to do concrete work, he was not permitted to take an uninterrupted lunch break.

44.     For his work, Plaintiff Naranjo received a flat hourly rate for all hours worked, including those in excess of forty (40) hours in a week. Plaintiff Naranjo was initially paid nineteen dollars ($19.00) or twenty dollars ($20.00) per hour, and in or around June 2018, his hourly rate was increased to twenty-two dollars ($22.00) per hour.

45.     Throughout his employment, Plaintiff typically received his wages on Fridays by

corporate check, with a pay slip that showed his wages and pay date, without any hours or pay rate(s). In or around July 2020, Plaintiff began to receive a paystub along with his wages, showing his hourly and overtime rates, pay period, and federal and state tax withholdings.

46.     Throughout his employment period, although Plaintiff Naranjo was required to clock-in and clock-out on a phone application used by the designated foreman at each project at the start and end of his shift, he was often missing between two (2) or three (3) hours from his wages each week.

47.     Plaintiff Naranjo recalls that laborers and other employees would constantly complain amongst each other about issues with their individual paychecks, particularly regarding unpaid overtime. Plaintiff Naranjo also addressed this issue with "Jhiro", whom he believed was employed as an assistant at the company's main office, in addition to uncompensated hours worked in certain pay periods and was told that "he was the only one to complain about the issue."

48.     On August 27, 2020, Plaintiff Naranjo was requested to appear at the Corporate Defendant's main office where he was terminated by Defendant Hannick. Although Defendant Hannick stated that Plaintiff Naranjo would be one of several employees who would be laid off, Plaintiff Naranjo believes that his termination was in retaliation for his father's Worker's Compensation claim against the Corporate Defendant.

**Defendants' Unlawful Corporate Policies**

49.     Plaintiff and the Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay the legally required overtime premiums.

50.     Defendants have not provided Plaintiff or Class Members with proper statement of wages containing the dates of work covered by their wage payments; name of employee; name of

employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the complete and total number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

51.     Defendants have not provided Plaintiff or Class Members with proper wage notices at the time of hire, annually by February 1 of each year, or when their wage rate changed.

52.     Upon information and belief, such individuals were not paid one and one-half (1.5) times their regular rate when working in excess of forty (40) hours per week. Additionally, such individuals were not provided with proper wage statements with their wage payments and were not provided wage notices at hiring, by February 1 of each year, and/or when their wage rate changed.

53.     Upon information and belief, throughout the Class Period and continuing until today, defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiff and the Collective Action Members)

54.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

55.     By failing to pay Plaintiff overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§

207(a)(1) and 215(a)(2).

56.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

57.    Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Class Members)**

58.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

59.    Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

60.    Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### THIRD CAUSE OF ACTION
### <u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES</u>
#### (Brought on Behalf of Plaintiff and the Class Members)

61.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

62.    Defendants have willfully failed to supply Plaintiff and the Class Members notice as required by Article 6, § 195(1), in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiff' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

63.    Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, et seq., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## FOURTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS</u>
### (Brought on Behalf of Plaintiff and the Class Members)

64.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

65.     Defendants have willfully failed to supply Plaintiff and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

66.     Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 et seq., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiff and his counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.    An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.      Fifty dollars ($50) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

i.      Two hundred and fifty dollars ($250) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

j.      An award of prejudgment and post-judgment interest;

k.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated:  New York, New York
        September 22, 2020

                                Respectfully submitted,

                                PELTON GRAHAM LLC

                        By: _____
                                Brent E. Pelton, Esq.
                                Pelton@PeltonGraham.com
                                Taylor B. Graham, Esq.
                                Graham@PeltonGraham.com
                                111 Broadway, Suite 1503

New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff and the putative*
*FLSA Collective and Class*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Nua LLC d/b/a Drex Corporation, Michael Durcan, Marcus Hannick, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

Signature

Printed Name: Juan Carlos Naranjo

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Nua LLC d/b/a Drex Corporation, Michael Durcan, Marcus Hannick, y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentancion de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

Firma

Nombre Escrito: Juan Carlos Naranjo

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

**Notice of Shareholder Liability for Services Rendered
Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of DREX CORPORATION are hereby notified that the plaintiff in this matter, individually and on behalf of the putative FLSA collective he seeks to represent, intends to enforce your personal liability, as the ten (10) largest shareholders of DREX CORPORATION, and to charge you with indebtedness of said corporation to the plaintiffs for services performed for the corporation as employees during the six (6)-year period preceding the filing of the complaint.

Services for the above-referenced corporations were terminated by plaintiff in August 2020, within the past 180 days.

Dated: September 22, 2020

Brent E. Pelton, Esq.

*Attorneys for Plaintiff and the putative
FLSA Collective and Class*

1